931 So.2d 177 (2006)
Darryl MOODY, Petitioner,
v.
STATE of Florida, Respondent.
No. 2D05-5360.
District Court of Appeal of Florida, Second District.
June 7, 2006.
*178 Robert A. Norgard, Bartow, for Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Respondent.
NORTHCUTT, Judge.
A jury acquitted Darryl Moody on several counts of an indictment and convicted him of a lesser-included offense on another count. When Moody moved for a new trial as to the conviction, the trial court set aside all the verdicts and then announced that it would permit the State to retry him on all the original charges. Moody has petitioned for a writ of prohibition barring his retrial. He contends that a retrial would violate his double jeopardy rights as to the charges of which he was acquitted. Moody further maintains that, because one of the acquittals absolved him of a necessary element of the charge of which he was convicted, he may not be retried on that charge, either. We agree with both assertions, and we grant the petition.

Background
Moody was charged with first-degree murder, burglary, grand theft, shooting at an occupied vehicle, and dealing in stolen property.[1] In his first trial he was convicted as charged and was sentenced to death on the first-degree murder conviction. The supreme court reversed Moody's convictions and remanded for a new trial after determining that the trial court had erred by denying Moody's motion to suppress a number of items that were later introduced as evidence against him. See Moody v. State, 842 So.2d 754, 760 (Fla. *179 2003). Moody was retried on the original charges, with the same trial judge presiding. The second jury found him not guilty of all charges except the homicide, for which Moody was found guilty of third-degree murder as a lesser-included offense of first-degree murder.
Thereafter, Moody filed a motion to dismiss or for arrest of judgment seeking to set aside the third-degree murder conviction because the jury had acquitted him of the grand theft that was the underlying felony for the third-degree murder offense. On the same day, Moody filed a timely motion for new trial on the ground that a juror or jurors had received evidence out of court; that a juror or jurors had failed to disclose that they had knowledge of the prior trial and of evidence that the supreme court ruled was to be excluded from the retrial; and that a juror or jurors had engaged in misconduct by discussing the case prior to deliberations.
The latter motion eventually led to interviews of the jurors by the trial judge. The judge determined that, as alleged in Moody's motion for new trial, a juror or jurors had obtained information about the case from outside the courtroom. Over the State's objection, the judge granted Moody a new trial for that reason  and for another reason that has become the focus of the proceedings thereafter: when questioned at the juror interviews, several jurors revealed that during their deliberations another juror had repeatedly accused them of being racially prejudiced. Thus, as an additional basis for ordering a new trial, the judge found that "the Defendant's right to a fair and impartial jury was impacted by a racially charged atmosphere that didn't allow for meaningful jury deliberations to take place." Having granted Moody a new trial, the judge denied his motion to dismiss or for arrest of judgment as moot.
Subsequently, the State moved the trial court to specify which offenses were subject to being retried. The motion asserted that Moody could be retried on all the original charges. "The Court has determined that meaningful jury deliberations were not able to be conducted because of the racial tension created in the jury room by a single juror," the State wrote. "Because the Court has determined that the verdicts were the result of this undue tension the verdicts should be treated as a nullity." The trial court orally denied that motion. Moody then filed a motion to dismiss in which he asked the trial court to restrict the retrial to the third-degree murder charge. Moody argued that a second retrial on the other charges would violate his double jeopardy rights because he had been acquitted of them at the first retrial.
The trial court denied Moody's motion in an order stating that Moody's second retrial on all the original charges would not constitute double jeopardy because "the verdicts were a nullity." The court posited that "the matter [is] analogous to a situation where a mistrial has occurred. After the mistrial, the case stands as if it had never been tried and the defendant is subject to being tried again on the same charges." Further, the court wrote that "[t]he Court is also mindful that the new trial granted to the Defendant was not based on prosecutorial misconduct or trial court error. Defendant sought a new trial based on juror misconduct and the State opposed that Motion. Fairness would indicate that the Defendant is subject to being tried again on the same charges."
Moody then filed the instant petition. We issued an order directing the State to show cause why the petition should not be granted, thus staying the proceeding below until further order of this court. See Fla. R.App. P. 9.100(h).

*180 Discussion
A petition for writ of prohibition is the proper vehicle by which to challenge a ruling that permits the prosecution of a defendant in violation of his federal and Florida constitutional protections against double jeopardy. See Rohr v. State, 916 So.2d 1002 (Fla. 2d DCA 2006); Murray v. Chavies, 671 So.2d 183, 184 (Fla. 3d DCA 1996); Beebe v. Foster, 661 So.2d 401, 402 (Fla. 1st DCA 1995).
As is well known, the double jeopardy protections prohibit retrying a defendant after a jury has acquitted him of the charge. See Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978). This principle is embodied in the procedural rules that govern criminal prosecutions in Florida's courts. For example, Florida Rule of Criminal Procedure 3.580 permits a court to order a new trial only "[w]hen a verdict has been rendered against the defendant or the defendant has been found guilty by the court[.]" (Emphases supplied.) Rule 3.640(a) provides that when a new trial is granted, it is to proceed as if no former trial had occurred "except that when an offense is divided into degrees or the charge includes a lesser offense, and the defendant has been found guilty of a lesser degree or lesser included offense, the defendant cannot thereafter be prosecuted for a higher degree of the same offense or for a higher degree than that of which the defendant was convicted."
Thus, Moody's motion for new trial put at issue only his conviction for third-degree murder. The trial court's attempt to order a new trial on charges for which verdicts were rendered in Moody's favor was not authorized by rule 3.580, was expressly forbidden by rule 3.640, and was in violation of Moody's constitutional right to be free of double jeopardy. The court's departure from these important strictures cannot be justified by any of the rationales it advanced.
The trial court's assertion that juror misconduct nullified the verdicts of acquittal is unsupported in Florida law. Indeed, this proposition is so novel that we have discovered no Florida case that addresses it one way or the other. But the notion is clearly at odds with rule 3.600, which sets forth the grounds upon which a new trial may be granted. Subsection (b)(4) of the rule provides that the court shall grant a new trial if it is established that any juror was guilty of misconduct, "providing substantial rights of the defendant were prejudiced thereby." Obviously, this proviso is inconsistent with the trial court's theory that a verdict finding the defendant not guilty is nullified by juror misconduct.
In response to our order to show cause why Moody's petition should not be granted, the State has submitted several Louisiana cases for the proposition that "where a non-curable structural defect occurs during a trial, the verdict is a nullity and Double Jeopardy does not bar retrial." It is telling that none of those decisions were predicated on juror misconduct. See State v. Goodley, 423 So.2d 648 (La.1983) (holding that double jeopardy principles did not preclude retrial for first-degree murder when first jury had purported to convict the defendant of lesser-included offense of manslaughter by less than unanimous vote); State v. Langley, 896 So.2d 200 (La.App.2004) (holding that judge's absences during critical aspects of trial nullified the proceedings and the resulting verdict); State v. Norman, 799 So.2d 619 (La.App.2001) (holding that verdict convicting defendant of both theft and illegal possession of stolen items was an illegal verdict in violation of double jeopardy); State v. Self, 772 So.2d 337 (La.App.2000) *181 (holding that double jeopardy did not bar defendant's prosecution after his first conviction was overturned on appeal because the jury had found him guilty by a less than unanimous verdict).
Even so, the State urges us to apply the Louisiana courts' nullification theory to instances of juror misconduct consisting of open expressions of racial bias during jury deliberations. The State argues that the Florida Supreme Court has "established a bright line with regard to the open interjection of racial bias into jury deliberations." Indeed, the supreme court has held that it is an overt act of misconduct for jurors to openly appeal to racial biases during deliberations. See Marshall v. State, 854 So.2d 1235, 1241 (Fla.2003); see also State v. Davis, 872 So.2d 250 (Fla. 2004); Powell v. Allstate Ins. Co., 652 So.2d 354 (Fla.1995). But in the context of a defendant's double jeopardy protections, an acquittal establishes an even brighter line: "[T]here is no exception [to the prohibition against trying the person again for the same offense] permitting retrial once the defendant has been acquitted, no matter how `egregiously erroneous,'" the acquittal may have been. Sanabria, 437 U.S. at 75, 98 S.Ct. 2170 (quoting Fong Foo v. United States, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962)).
Moreover, in this case there is no evidence that any juror appealed to racial biases during the deliberations. To the contrary, the only evidence on this point suggested that one juror objected when she perceived racial prejudice on the parts of some of the others. If this was "misconduct," it could only have been to Moody's benefit, and therefore was not a proper ground for granting a new trial. See Fla. R.Crim. P. 3.600(b)(4).
The trial court's alternative suggestion that Moody's situation is analogous to cases involving mistrials is likewise unavailing. Moody's trial was not terminated by a declaration of a mistrial. It ended with a verdict convicting him of one lesser-included offense and acquitting him of all other charges. The significance of this difference was evident in all of the authorities cited by the trial court on this point. In two of the cases, Richardson v. United States, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984), and Sayan v. State, 381 So.2d 363 (Fla. 4th DCA 1980), mistrials were declared after the juries could not reach verdicts on some counts in the informations. The courts held that in that circumstance a retrial on those counts was not barred on double jeopardy grounds. The Richardson Court "reaffirm[ed] the proposition that a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which the petitioner was subjected." 468 U.S. at 326, 104 S.Ct. 3081. On the other hand, the Court wrote, it recognized that "the protection of the Double Jeopardy Clause by its terms applies [where] there has been some event, such as an acquittal, which terminates the original jeopardy." Id. at 325, 104 S.Ct. 3081. Here, the jury's verdict acquitting Moody terminated the original jeopardy, and as to those charges he may not again be placed in jeopardy.
The trial court also posited that two other federal decisions, United States v. Kanahele, 951 F.Supp. 928 (D.Haw.1996), and United States v. Keating, 147 F.3d 895 (9th Cir.1998), stand for the proposition that a defendant's double jeopardy protection is not violated when a new trial is ordered based on juror misconduct. But in neither case did the court suggest that a defendant may be retried after the original jeopardy has been terminated by an acquittal. Kanahele involved the aspect of double jeopardy that recognizes the defendant's right to have his guilt or innocence *182 determined by a particular tribunal. See Arizona v. Washington, 434 U.S. 497, 503, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). No verdicts were reached in Kanahele; over the defendants' objections the district court declared a mistrial during jury deliberations. The defendants then moved to dismiss based on double jeopardy. The district court denied the motion in a published opinion. It concluded that juror misconduct had created a manifest necessity for the mistrial and that, therefore, the defendants' retrial on the charges would not violate double jeopardy. See Washington, 434 U.S. at 505, 98 S.Ct. 824. The Kanahele court did not hold that a defendant may be retried on a charge of which he has been acquitted.
Keating, too, is inapposite. In that case, the Ninth Circuit affirmed the trial court's order granting Keating a new trial on charges of which the jury had found him guilty based on the court's determination that the jurors had received extrinsic evidence. When affirming the new trial order, the majority of the Ninth Circuit panel declined to address Keating's claim that the evidence had been insufficient to convict him. In a footnote, the court stated that "[w]hen Keating is retried his double jeopardy rights will not be implicated regardless of the sufficiency of the evidence at the first trial." 147 F.3d at 904 n. 6. This was because a guilty verdict that is set aside on a motion by the defendant does not terminate jeopardy. Id. (citing United States v. Gutierrez-Zamarano, 23 F.3d 235, 238 (9th Cir.1994), and United States v. Wood, 958 F.2d 963, 970 (10th Cir.1992)). As in the case of Kanahele, the Keating court did not hold that a defendant may be retried on a charge of which he has been acquitted.
Finally, the trial court's individual notion of fairness is simply irrelevant in the face of Moody's constitutional right not to be subjected to double jeopardy. See Sanabria, 437 U.S. at 75, 98 S.Ct. 2170. In any event, the court's concept of fairness is certainly debatable. Neither the Double Jeopardy Clause nor the procedural rules described above contemplate that a defendant with meritorious grounds for seeking a new trial following his conviction on one charge could be penalized by the judge's individual feeling that it would be only fair to also set aside his acquittals on other charges.
In sum, none of the theories espoused by the trial court or the State constitute valid exceptions to the constitutional prohibition against putting Moody in jeopardy again after the jury acquitted him of the charges. The same holds for the first-degree murder charge that the jury rejected in favor of the lesser-included offense of third-degree murder. See Chapman v. State, 442 So.2d 1024, 1025-26 (Fla. 5th DCA 1983) (holding that double jeopardy protections precluded defendant's retrial on original charge after the prior jury convicted him of the lesser-included offense and the trial court granted defendant's motion for new trial). Thus, the only offense for which Moody possibly could be retried is third-degree murder.
This brings us to the other issue posed in Moody's petition for writ of prohibition, that being his assertion that a retrial on the offense of third-degree murder is prohibited by double jeopardy considerations. The parties have posed this issue in terms of whether the jury's verdict convicting Moody of third-degree murder was inconsistent with its acquittal of him on the grand theft charge. The State argues that inconsistent verdicts are permissible. See State v. Powell, 674 So.2d 731, 732 (Fla. 1996). But Moody points out that, while factually inconsistent verdicts may stand, legally inconsistent verdicts may not. Id. at 732. Verdicts are legally inconsistent *183 when the charges against the defendant are legally interlocking and the verdicts are "truly inconsistent." Id.; see also Mahaun v. State, 377 So.2d 1158, 1160 (Fla. 1979); Cuevas v. State, 741 So.2d 1234 (Fla. 5th DCA 1999). "True inconsistency" occurs when "`an acquittal on one count negates a necessary element for conviction on another count.'" Powell, 674 So.2d at 733 (quoting Gonzalez v. State, 440 So.2d 514, 515 (Fla. 4th DCA 1983)). Verdicts that are inconsistent in this way "require acquittal." State v. Connelly, 748 So.2d 248, 252 (Fla.1999) (emphasis supplied).
There can be no doubt that the verdict finding Moody guilty of third-degree murder was truly, legally, inconsistent with the verdict finding him not guilty of the grand theft charge. Under the version of the third-degree murder statute with which Moody was charged, the State had to prove that the homicide was committed while Moody was engaged in the perpetration of an appropriate underlying felony. § 782.04(4), Fla. Stat. (1993).[2] The underlying felony that the State sought to establish was grand theft. The State's theory was that Moody and an accomplice were stripping down a stolen car in an orange grove when Moody shot and killed the grove manager, who had happened upon them. Count two of the indictment charged Moody with theft of the car and its contents, and count five charged him with first-degree murder of the grove manager. The jury acquitted Moody of count two and, on count five, found him guilty of the lesser-included offense of third-degree murder. However, because the verdict on count two acquitted Moody of an essential element of third-degree murder, his conviction on count five could not stand. See Mahaun, 377 So.2d at 1161 (holding that defendant's conviction of third-degree murder would not stand in light of defendant's acquittal of underlying aggravated child abuse offense).
For that reason, Moody's motion for dismissal or arrest of judgment as to the third-degree murder conviction was well-taken. But, because the trial court set aside the guilty verdict (while erroneously attempting to set aside the acquittals as well) and ordered a new trial, Moody does not now stand convicted of third-degree murder. As things stand, there are no inconsistent verdicts in this case. Rather, Moody has been acquitted of four counts and he has been absolved of the fifth count with the exception of the lesser-included offense of third-degree murder, which ostensibly remains unresolved. The question, then, is whether the State may proceed to retry Moody for that offense. We conclude that it may not.
To convict Moody of third-degree murder, the State would have to prove beyond a reasonable doubt that he killed the victim while engaged in the perpetration of the grand theft. But the State cannot proceed before a different jury in an attempt to prove the underlying felony of grand theft, a necessary element of the third-degree murder charge, when a jury has already found him not guilty of the grand theft. This would violate Moody's constitutional protections against double jeopardy. Thus, for example, in Perkins v. Williams, 424 So.2d 990 (Fla. 5th DCA 1983), the Fifth District issued a writ prohibiting the defendant's retrial on a charge of robbery after the first jury could not reach a verdict on that count but acquitted him of a separately charged lesser-included offense of grand theft arising from the *184 same incident. The court concluded that a retrial of the defendant for the greater offense after his acquittal of one of its constituent elements would violate his double jeopardy rights. The same is true in Moody's case.
The petition for writ of prohibition is granted. Moody shall not be retried in Tenth Circuit case number 94-3545 on burglary, grand theft, shooting at an occupied vehicle, first-degree murder, dealing in stolen property, or any lesser-included offenses of those greater offenses.
WHATLEY and CASANUEVA, JJ., Concur.
NOTES
[1] The indictment also charged Moody with possession of a firearm by a convicted felon, but Moody, in his petition, states: "The three counts of possession by [a] convicted felon are no longer at issue and are not a subject of this writ."
[2] Section 782.04(4), Florida Statutes (1993), set forth a list of specific felonies that did not qualify.